UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                 :

UNITED STATES OF AMERICA,         :

                                                 :

           – *against* –              :          11 Cr. 310 (PGG)

JAVEL TAYLOR,                         :          (filed electronically)

                      Defendant.     :

-------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAVEL TAYLOR'S
PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.


JOSHUA L. DRATEL
DRATEL & MYSLIWIEC, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@joshuadratel.com

*Attorneys for Defendant Javel Taylor*

– *Of Counsel* –

Joshua L. Dratel
Stuart A. White

**TABLE OF CONTENTS**

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      *The Allegations In the Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.      *Mr. Taylor's Declaration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C.      *Mr. Taylor's March 21, 2011, Statements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

POINT I

THE U.S. CURRENCY AND OTHER
EVIDENCE ALLEGEDLY RECOVERED
AT THE TIME OFARREST AND PURSUANT
TO THE SEARCH SHOULD BE SUPPRESSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT II

MR. TAYLOR'S MARCH 21, 2011, STATEMENTS,
WERE OBTAINED IN VIOLATION OF MIRANDA
AND WERE THE PRODUCT OF AN UNLAWFUL ARREST . . . . . . . . . . . . . . . . . . . . . . . . 8

A.      *Mr. Taylor Was Under Arrest, and Therefore Indisputably*
        *in Custody, When His Alleged Statements Were Made* . . . . . . . . . . . . . . . . . . . . . . . . 9

B.      *Mr. Taylor's Statements Should Be*
        *Suppressed as Fruits of His Unlawful Arrest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

POINT III

THE IDENTIFICATION OF MR. TAYLOR SHOULD
BE SUPPRESSED BECAUSE THE IDENTIFICATION
PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

CASES

*Alvarez v. Fischer*, 170 F. Supp. 2d 379, 385 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . 11,12

*Brinegar v. U.S.*, 338 U.S. 160, 175 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California v. Beheler*, 463 U.S. 1121, 1125 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chambers v. Maroney*, 399 U.S. 42, 51 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Crawford v. Washington*, 541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Maryland v. Pringle,* 540 U.S. 366, 370 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McCarthy v. Dearmit*, 99 Pa. 63, 69, (S.C. PA 1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Miranda v. Arizona*, 384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,8,9,10

*Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Segura v. United States,* 468 U.S. 796, 804 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir.1990) . . . . . . . . . . . . . . . . . . 11

*United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Moodie*, 00 CR. 156 (AGS),
    2000 WL 776910, at *2 (S.D.N.Y. June 15, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

*United States v. Pena*, 461 F.2d 333, 339 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wong Sun v. United States*, 83 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,10

*Watkins v. Sowders*, 449 U.S. 341 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

U.S. Const., amend IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S. Const., amend V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,10

U.S. Const., amend VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §812 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 12(b), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 49.1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
                                                          :
          – against –                                     :         11 Cr. 310 (PGG)
                                                          :
JAVEL TAYLOR,                                             :
                                                          :
                    Defendant.                            :
                                                          :
----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAVEL TAYLOR'S PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.**

This memorandum of law is submitted in support of defendant Javel Taylor's pretrial motions pursuant to Rule 12(b), Fed.R.Crim.P. As detailed below, Mr. Taylor moves to suppress: (1) certain evidence seized incident to his arrest, which was unlawful and without probable cause, and all the fruits thereof; (2) any statements he made to law enforcement March 21, 2011 (and all fruits thereof), which were also unlawfully obtained both pursuant to the unlawful arrest as well as because they were obtained prior to Mr. Taylor being informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) the identification of Mr. Taylor, and all fruits thereof. In the alternative, Mr Taylor moves for an evidentiary hearing on each and all of these issues.

Accordingly, for the reasons set forth below, it is respectfully requested that the Court grant Mr. Taylor's motions in their entirety.

-1-

**STATEMENT OF FACTS**

Mr. Taylor is named as a defendant in a two-count Indictment that charges him with conspiracy to distribute and possess with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and distribution and possession with the intent to distribute crack cocaine in violation of 21 U.S.C. §§812, 841(a)(1) & 841(b)(1)(C). *See* Indictment, attached as Exhibit 2 to the June 3, 2011 Declaration of Joshua L. Dratel, Esq., (hereinafter "Dratel Decl.").

Count One alleges a conspiracy between Mr. Taylor and his co-defendant Leonard Fitzgerald, to distribute and possess to distribute crack. *See* Indictment, at 1-2.[1] The Overt Act alleges that Mr. Taylor and Mr. Fitzgerald sold approximately four bags of crack to an undercover officer ("UC-1") in exchange for approximately $40. *See* Indictment, at 2. Count Two alleges the companion substantive offense: that Mr. Taylor and Mr. Fitzgerald distributed, and possessed with the intent to distribute, crack. *Id*.

**A.**   *The Allegations In the Complaint*

The March 22, 2011, Complaint (a copy of which is attached as Exhibit 3 to the Dratel Decl.) alleges that the single drug sale charged in the Indictment occurred inside 860 Amsterdam Avenue, an apartment building in Manhattan. *See* Complaint, at ¶ 6(b). According to the Complaint, officers from the New York City Police Department ("NYPD") arrested Mr. Taylor shortly after observing him exit the building located at 860 Amsterdam Avenue, and allegedly seized $45 in U.S. currency, $40 of which was allegedly pre-recorded "buy money." *Id*., at ¶ 6(c).

---

[1] Mr. Fitzgerald has since pleaded guilty. *See* Docket Entry on April 27, 2011.

However, the NYPD officers did not observe any transaction between Mr. Taylor and Mr. Fitzgerald.  Rather, UC-1 received the crack from Mr. Fitzgerald.  *See* Complaint, at ¶ 6(b).  According to the Complaint, "the transaction proceeded as follows":

> UC-1 gave $40 in pre-recorded buy money1 to FITZGERALD for the purpose of purchasing narcotics.  FITZGERALD and TAYLOR then entered a building located at 860 Amsterdam Avenue (the "Building").  Shortly thereafter, FITZGERALD exited the Building and walked with UC-1 in the direction of 140 West 104th Street.

*Id*.

The Complaint also alleges that "FITZGERALD indicated to UC-1, in sum and substance, that he had obtained the crack cocaine from TAYLOR and that TAYLOR did not want to deal with UC-1 directly because TAYLOR did not know UC-1." *Id*.  Also according to the Complaint, "FITZGERALD handed UC-1 four small plastic zip-lock bags containing what appeared to be crack cocaine." *Id*.  In addition, "[s]hortly thereafter, FITZGERALD was placed under arrest by [an NYPD detective] and another member of his team." *Id*.

The Complaint further alleges that

> a few moments later, TAYLOR exited the Building with another individual ("CC-1").  Other officers observed TAYLOR pass an object which appeared to the officers to be narcotics – to CC-1.  Shortly thereafter, TAYLOR was arrested by members of [NYPD} Detective-1's team and CC-1 ran away and avoided arrest.  [NYPD] Detective-1 searched TAYLOR'S jacket and found $45 in United States currency, including the $40 in pre-recorded buy money used by UC-1 to purchase the narcotics.

*Id*., at ¶ 6(c).

B.     *Mr. Taylor's Declaration*

In his June 3, 2011 Declaration ("Taylor Decl."), attached as Exhibit 1 to the Dratel Decl., Mr. Taylor provides a vastly different account of the circumstances leading up to and including his arrest. *See* Taylor Decl., at ¶¶ 5-12. In effect, Mr. Taylor disputes the Complaint's version with respect to his conduct prior to his arrest, and provides additional information with respect to his arrest and its immediate and subsequent aftermath. *Id.*, at ¶¶ 2-16.

In fact, Mr. Taylor did not participate in any crack transaction, and was instead exiting 860 Columbus Avenue with his sister's minor child, D.E.,[2] for whom he was caring while his sister was at an appointment. *Id.*, at ¶ 5.[3] In his Declaration, Mr. Taylor also explains his fleeting encounter and relationship with CC-1. *Id.*, at ¶¶ 6-9.

After arresting Mr. Taylor, NYPD officers searched him at the scene, seizing currency and other items Mr. Taylor possessed, including a note from Mr. Taylor's Parole Officer, whom he had seen earlier that day, a medical record form from St. Luke's hospital, and various other items. *See* Taylor Decl., at ¶ 12. *See also* Complaint, at ¶ 6(c); Government's April 19, 2011, Disclosure at JT-000018 (Prisoner Property Report) (a copy of which is attached as Exhibit 5 to the Dratel Decl.).

---

[2] Initials are used herein for the minor child's identity to protect her privacy. Rule 49.1(a)(3), Fed.R.Crim.P.

[3] There is a cluster of New York City Housing Authority (hereinafter "NYCHA") apartment buildings bordered to the east and west by Amsterdam Avenue and Columbus Avenue, and by the north and south by 102nd Street and 104th Street. Within that cluster there are buildings with exits at 860 *Amsterdam* Avenue, and exits at 860 *Columbus* Avenue. Mr. Taylor entered and exited at 860 *Columbus* Avenue.

C.     *Mr. Taylor's March 21, 2011, Statements*

Upon arresting Mr. Taylor outside 860 Columbus Avenue, the NYPD officers proceeded to question Mr. Taylor.  *See* Taylor Decl., at ¶ 11.  *See also* April 19, 2011, letter from Assistant United States Attorney Amy R. Lester (hereinafter "AUSA Lester Letter") (a copy of which is attached hereto as Exhibit 4) (alleging, at 2, that Mr. Taylor made statements following his arrest).  That interrogation was conducted absent any *Miranda* warnings administered to Mr. Taylor.  *See* Taylor Decl., at ¶ 11.

Mr. Taylor was next transported to the 25th Precinct, where he remained in NYPD custody.  *Id*., at ¶ 13.  Later that day, two NYPD detectives visited Mr. Taylor in his cell at the 25th Precinct to ask him questions.  *Id*., at ¶ 14.  The detectives cautioned Mr. Taylor that he did not have to answer their questions, but they did not inform him of his rights pursuant to *Miranda*.  *Id*.  At a certain point during that interview, Mr. Taylor stopped answering questions and told the detectives he did not want to talk to them anymore without an attorney present.  *Id*.  As a result, the two NYPD detectives exited Mr. Taylor's cell.  *Id*.  At that point, no one had yet informed Mr. Taylor of his *Miranda* rights.  *Id*., at ¶ 14.

More than two hours later, NYPD personnel processed Mr. Taylor at Central Booking in Manhattan.  *Id*., at ¶ 15.  Later, however, NYPD officers drove Mr. Taylor to the Metropolitan Detention Center ("MDC") in Brooklyn, where Mr. Taylor first met an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF").  *Id*., at ¶ 16.  The ATF agent informed Mr. Taylor of his *Miranda* rights – the first time that Mr. Taylor had been so informed by any law enforcement official.  *Id*.

## POINT I

### THE U.S. CURRENCY AND OTHER EVIDENCE ALLEGEDLY RECOVERED AT THE TIME OF ARREST AND PURSUANT TO THE SEARCH SHOULD BE SUPPRESSED

As set forth below, Mr. Taylor's arrest was not based on probable cause. As a result, the evidence seized pursuant to the arrest, and the fruits thereof, must be suppressed. In the alternative, an evidentiary hearing should be conducted to determine whether or not the arrest was valid.

The Fourth Amendment protects against "unreasonable searches and seizures." *U.S. Const., amend IV*. As the Supreme Court has declared, "[i]n enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." *Chambers v. Maroney*, 399 U.S. 42, 51 (1970).

A warrantless arrest is impermissible under the Fourth Amendment if the police lacked probable cause to believe that a felony had been committed. *Maryland v. Pringle,* 540 U.S. 366, 370 (2003).

Moreover, "'the substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.'" *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949), *quoting McCarthy v. Dearmit*, 99 Pa. 63, 69, (S.C. PA 1881). In the event evidence is recovered pursuant to an unlawful stop or arrest, the Supreme Court established long ago that such evidence is inadmissible as tainted fruit of that illegality. *Wong Sun v. United States*, 83 U.S. 471 (1963). In addition, if the defendant shows "that disputed issues of material fact exist," an evidentiary hearing should be conducted to determine whether evidence should be suppressed. *United States*

*v. Moodie*, 00 CR. 156 (AGS), 2000 WL 776910, at *2 (S.D.N.Y. June 15, 2000) *citing United States v. Pena*, 461 F.2d 333, 339 (2d Cir. 1992).

Here, all items seized from Mr. Taylor must be suppressed because his warrantless arrest by NYPD officers was not based on probable cause. *Segura v. United States,* 468 U.S. 796, 804 (1984) ("[e]vidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion"). Review of the Complaint establishes that the evidence suggesting that Mr. Taylor engaged in the charged offenses is weak, and was not sufficient to justify his arrest.

For example, as detailed **ante**, at 3, the NYPD officers did not witness any transaction between Mr. Taylor and Mr. Fitzgerald, but simply them walking together into a building. Nor did the officers recover any drugs from Mr. Taylor, or any other indicia of narcotics trafficking. Indeed, the Complaint does not in any manner set forth facts typical of the intensive, long-term surveillance and investigation that would lead to a conclusion that Mr. Taylor was involved in crack transactions. Nor did Mr. Taylor make any admissions that would substantiate the particular charges in this case.[4]

Thus, the facts set forth in the Complaint constitute in some instances multiple hearsay,[5] and are woefully weak and entirely circumstantial.[6] They fail to amount to probable cause, and, as a result, any and all evidence – and the fruits thereof – seized from Mr. Taylor must be

---

[4] Mr. Taylor's alleged statements related to marijuana, not crack. *See* Exhibit 4, at 2.

[5] The ATF Special Agent who authored the Complaint related what had been told him by the NYPD officers.

[6] The statement by Mr. Fitzgerald would, of course, constitute hearsay and therefore be inadmissible against Mr. Taylor [and, even if admissible under some theory, be precluded by the Sixth Amendment's right to confrontation, *see Crawford v. Washington*, 541 U.S. 36 (2004).

suppressed.  Moreover, even if the Complaint's allegations satisfy the probable cause standard, Mr. Taylor has certainly presented "disputed issues of material of fact" warranting, at the very least, an evidentiary hearing.  *See* Taylor Decl.  *See also* **ante**, at 4.

Unlike the defendant in *Moodie*, Mr. Taylor has "challenged the recital of facts in the Complaint concerning" the offense, including whether he sold crack to Mr. Fitzgerald, and how much U.S. currency the NYPD officers seized from Mr. Taylor.  Also unlike the defendant in *Moodie*, Mr. Taylor has submitted a Declaration based on his personal knowledge of the underlying facts.

Accordingly, it is respectfully submitted that any and all material seized from Mr. Taylor should be suppressed because it constitutes the fruit of Mr. Taylor's unlawful arrest.  In the alternative, and because disputed issues of material fact exist, it is respectfully submitted that an evidentiary hearing on these issues is warranted.

## POINT II

### MR. TAYLOR'S MARCH 21, 2011, STATEMENTS, WERE OBTAINED IN VIOLATION OF MIRANDA AND WERE THE PRODUCT OF AN UNLAWFUL ARREST

The Court should suppress any statements the government seeks to introduce against Mr. Taylor because they were elicited in violation of Mr. Taylor's Sixth and Fifth Amendment rights as prescribed by *Miranda*.  Mr. Taylor's statements were obtained from him as a result of direct questioning immediately after his arrest (and subsequent to that as well), and before any NYPD (or other law enforcement) officer informed him of his *Miranda* rights.  Nor did Mr. Taylor at any point waive his *Miranda* rights.  As a result, all statements elicited from Mr. Taylor, and the fruits thereof, must be suppressed.  In the alternative, an evidentiary hearing should be conducted

to determine whether or not Mr. Taylor's statements were obtained legally.

### A.     *Mr. Taylor Was Under Arrest, and Therefore Indisputably in Custody, When His Alleged Statements Were Made*

In *Miranda*, the Supreme Court established procedural safeguards to apply when a defendant is subject to custodial interrogation by law enforcement, defining such "custodial interrogation" to include any questioning by law enforcement once a defendant "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, at 444.

In determining whether a defendant is in custody for *Miranda* purposes, "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on [the defendant's] freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). As the Second Circuit has explained, "[t]his inquiry focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992).

Here, Mr. Taylor was undeniably under arrest when the NYPD officers reached him outside 860 Columbus Avenue. Indeed, the Complaint acknowledges that Mr. Taylor was arrested upon that initial encounter. *See* Complaint, at ¶ 6(c). The NYPD also instantly began interrogating Mr. Taylor, asking him why he ran when they approached, an inquiry plainly designed to elicit incriminating statements. *See Rhode Island v. Innis,* 446 U.S. 291, 300-01 (1980).

Also, once that question was answered, the NYPD officers proceeded with follow-up questions, including the whereabouts of the marijuana Mr. Taylor allegedly admitted to having possessed. *See* AUSA Lester Letter, at 2. Those also constituted direct questions, from experienced police officers, intended to elicit incriminating statements. *Innis*, 446 U.S. at 300-

01.  Thus, Mr. Taylor's statements were a product of a custodial interrogation, and obtained in violation of Mr. Taylor's Fifth Amendment right against self-incrimination.  *Id.*

As detailed **ante**, at 4 (and in Mr. Taylor's Declaration), Mr. Taylor was not informed of his *Miranda* rights until after he had made all the statements attributed to him.  *See* Taylor Decl., at ¶¶ 11, 13-16.  Those essential *Miranda* warnings were administered several hours later at MDC by an ATF agent, following additional interrogation at the 25th Precinct by detectives, and only after NYPD had subsequently transferred Mr. Taylor to the custody of the federal government.  *Id.*, at ¶¶ 13-16.

Accordingly, all of the statements attributed to Mr. Taylor in the AUSA Lester Letter (and any others the government might seek to introduce) must be suppressed.  Moreover, any evidence or derivative evidence, including subsequent statements, seized as a consequence of Mr. Taylor's unlawful custodial interrogation, "is subject to the fruit of the poisonous tree doctrine," the remedy for which is suppression of that evidence.  *Wong Sun,* 371 U.S. 471.  In the alternative, an evidentiary hearing should be conducted on the issue.

**B.**     ***Mr. Taylor's Statements Should Be Suppressed as Fruits of His Unlawful Arrest***

In addition, for the reasons set forth **ante**, in POINT I, the police lacked probable cause to arrest Mr. Taylor.  Consequently, all statements made subsequent to the unlawful arrest should be suppressed.  *See Wong Sun,* 371 U.S. at 479.

## POINT III

**THE IDENTIFICATION OF MR. TAYLOR SHOULD
BE SUPPRESSED BECAUSE THE IDENTIFICATION
PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE**

The NYPD officers employed a confirmatory identification procedure to identify Mr. Taylor. After Mr. Taylor was in custody, UC-1 confirmed his identification.[7] The government has not provided any further information regarding the identification procedure, such as when the undercover officer was driven by Mr. Taylor, or by what means he identified Mr. Taylor as the suspect. The Complaint describes only a fleeting factual reference to any observation of Mr. Taylor (that he entered a building with Mr. Fitzgerald) prior to his arrest. *See* Complaint, at ¶ 6(b).

A pre-trial identification must be excluded "if the procedure that produced the identification is so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994) (internal citations omitted); *see also United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir.1990). The pretrial identification must be excluded only if it was "both produced through an unnecessarily suggestive procedure and unreliable." *Bautista*, 23 F.3d 726, 729-30. If under the totality of the circumstances, however, the pretrial identification "possesses sufficient indicia of reliability," the Court may admit the evidence. *Id*.

The Second Circuit has further established that a "confirmatory identification by an officer witness shortly following an arrest represents an essential safeguard by police to ascertain that the proper person is apprehended." *Alvarez v. Fischer*, 170 F. Supp. 2d 379, 385 (S.D.N.Y.

---

[7] This information was relayed orally by the government in a telephone conversation.

-11-

2001). A court may conclude that the identification was not impermissibly suggestive even if the identification is made while the defendant is in the custody of police. *Id.*

The Supreme Court has determined that a pre-trial hearing to determine whether the confirmatory identification was impermissibly suggestive may often be advisable and, in some circumstances, compelled. *See Watkins v. Sowders*, 449 U.S. 341 (1981); *Fischer*, 170 F. Supp.2d at 384.

Here, the government has not provided any information regarding the identification of Mr. Taylor other than that UC-1 made a confirmatory identification of Mr. Taylor while the latter was already in custody. Therefore the precise circumstances of UC-1's identification of Mr. Taylor are unknown. Accordingly, the identification of Mr. Taylor should be suppressed, or, in the alternative, a hearing should be conducted to determine whether or not the identification was impermissibly suggestive and, consequently, inadmissible.

## CONCLUSION

Accordingly, for all the reasons set forth above, it is respectfully submitted that the Court should (1) suppress all materials (and fruits thereof) seized from Mr. Taylor incident to his arrest; (2) suppress any and all statements (and fruits thereof) attributed to Mr. Taylor; and (3)

suppress the identification of Mr. Taylor.  In the alternative, Mr Taylor moves for an evidentiary hearing on all and each of those issues.

Dated:  June 3, 2011
       New York, New York

                                                Respectfully submitted,

                                                /s/Joshua L. Dratel
                                               Joshua L. Dratel
                                               DRATEL & MYSLIWIEC, P.C.
                                               2 Wall Street, 3rd Floor
                                               New York, New York 10005
                                               (212) 732-0707
                                               jdratel@joshuadratel.com

                                               *Attorneys for Defendant Javel Taylor*

  – Of Counsel –

Joshua L. Dratel
Stuart A. White