UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                 :

UNITED STATES OF AMERICA,       :

                                                 :

       – against –                :        11 Cr. 310 (PGG)

                                               :

JAVEL TAYLOR,                       :        (Filed Electronically)

                                               :

                Defendant.         :

                                               :
-------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAVEL
TAYLOR'S MOTION FOR ACQUITTAL, AND/OR A NEW TRIAL
PURSUANT TO RULE 29(c), AND RULE 33, FED.R.CRIM.P.

 

JOSHUA L. DRATEL
DRATEL & MYSLIWIEC, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@joshuadratel.com

*Attorneys for Defendant Javel Taylor*

– *Of Counsel* –

Joshua L. Dratel
Lindsay A. Lewis

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

A JUDGMENT OF ACQUITTAL SHOULD BE ENTERED
AS TO COUNT ONE BECAUSE THE EVIDENCE WAS
NOT SUFFICIENT TO ESTABLISH A CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. *The Essence of a Conspiracy: An Unlawful Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. *Evidence Adduced by the Government That a "Steerer" Helped a
Willing Buyer Locate a Willing Seller Is Insufficient to Establish
the Existence of an Agreement Between the Facilitator and the Seller* . . . . . . . . . . . . . . 3

C. *Evidence Adduced At Trial That Leonard Fitzgerald Was a Mere "Steerer"
Helping To Facilitate a Drug Sale Between a Willing Buyer, the Undercover
Officer, and a Willing Seller, Mr. Taylor, Was Insufficient to Establish the
Existence of an Unlawful Agreement Between Mr. Fitzgerald and Mr. Taylor* . . . . . . . . 4

POINT II

A NEW TRIAL SHOULD BE ORDERED ON COUNT TWO BECAUSE THE
THE JURY WAS ERRONEOUSLY INSTRUCTED THAT IT COULD FIND
MR. TAYLOR GUILTY ON COUNT TWO AS AN AIDER AND ABETTOR . . . . . . . . . . . 10

A. *The Law Regarding the Crime of Aiding and Abetting* . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. *Mr. Taylor Could Not Have Aided and Abetted the Crime Charged In Count Two* . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

CASES

*Krulewitch v. United States*, 336 U.S. 440 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bright*, 630 F.2d 804 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Colon*, 884 F.2d 1550 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Hysohion*, 448 F.2d 343 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,11

*United States v. Johnson*, 439 F.2d 885 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Labat*, 905 F.2d 18 (2d Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Manbeck*, 744 F.2d 360 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. McDermott*, 245 F.3d 133 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Neils*, 156 F.3d 382 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Resto*, 824 F.2d 210 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,11

*United States v. Rosenblatt*, 554 F.2d 36 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Rubin*, 844 F.2d 979 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Smith*, 198 F.3d 377 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Tejada*, 956 F.2d 1256 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Torres*, 519 F.2d 723 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Tyler*, 758 F.2d 66 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10

## STATUTES

18 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,11

18 U.S.C. §2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 U.S.C. §846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,5

Rule 29(c), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,13

Rule 33, Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,13

## OTHER

"Developments in the Law Criminal Conspiracy," 72 Harv.L.Rev. 920, 926 (1959) . . . . . . . . . . 3

**Introduction**

This Memorandum of Law is submitted in support of defendant Javel Taylor's post-trial motion for a judgment of acquittal pursuant to Rule 29(c), Fed.R.Crim.P., and/or a new trial pursuant to Rule 33, Fed.R.Crim.P. For the reasons set forth below, as well as those previously posited in Mr. Taylor's prior oral Rule 29 motions during trial (which Mr. Taylor restates but does not repeat herein except as relevant to the points addressed in this Memo of Law), both counts on which Mr. Taylor was convicted suffer from fatal legal and/or factual deficiencies.

For example, regarding Count One, charging Mr. Taylor with conspiring to distribute, or to possess with the intent to distribute, cocaine base, in violation of 21 U.S.C. §846, the evidence was insufficient to establish an unlawful agreement between Mr. Taylor, the alleged drug seller, and Leonard Fitzgerald, whom testimony established was merely a "steerer" in the drug transaction.

Regarding Count Two, charging Mr. Taylor with distributing cocaine base, or with possessing cocaine base with the intent to distribute it, and/or aiding and abetting in that crime pursuant to 18 U.S.C. §2, a new trial should be ordered because the Court improperly instructed the jury on an invalid theory of liability: that Mr. Taylor (whom the government alleged was the drug seller and principal actor in the charged drug transaction) could be found guilty as an aider and abettor.

Accordingly, it is respectfully submitted that Mr. Taylor's convictions on both counts be vacated, that a judgment of acquittal be entered for Count One, and that a new trial be ordered on Count Two.

**Statement of the Facts**

Having presided over the entire case, including the trial, the Court is fully aware of the facts of this case. Therefore, rather than set forth a separate statement of facts, this Memo of Law will incorporate the relevant facts within each respective Point.

**POINT I**

**A JUDGMENT OF ACQUITTAL SHOULD BE ENTERED
AS TO COUNT ONE BECAUSE THE EVIDENCE WAS
NOT SUFFICIENT TO ESTABLISH A CONSPIRACY**

Mr. Taylor's conviction on Count One, which charged conspiring to distribute, or to possess with the intent to distribute, cocaine base, in violation of 21 U.S.C. §846, should be vacated, and a judgment of acquittal entered, because the government failed to prove beyond a reasonable doubt that there was an unlawful agreement between Mr. Taylor *and another individual*, in this case his alleged co-conspirator, Leonard Fitzgerald. The evidence at trial demonstrated only that Mr. Fitzgerald was a "steerer" in the drug transaction, and not a co-conspirator. As case law discussed below establishes, evidence that Mr. Fitzgerald acted as a "steerer" is insufficient to establish the existence of a conspiracy between himself and Mr. Taylor. Thus, absent proof of a conspiracy, Mr. Taylor's conviction on Count One cannot survive.

**A.**     *The Essence of a Conspiracy:  An Unlawful Agreement*

As the Second Circuit has often explained, *see, e.g., United States v. McDermott*, 245 F.3d 133, 137-38 (2d Cir. 2001), "'the fundamental element of a conspiracy is unlawful agreement.'" *United States v. Mittelstaedt*, 31 F.3d 1208, 1218 (2d Cir. 1994), *quoting United States v. Rubin*, 844 F.2d 979, 983 (2d Cir. 1988).  *See also United States v. Tejada*, 956 F.2d

1256, 1264 (2d Cir. 1992) ("agreement defines the conspiracy"); *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977).

Thus, under Second Circuit law, a conspiracy requires a "meeting of the minds," and "[u]nless at least two people commit (the act of agreeing), no one does." *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977), *quoting Krulewitch v. United States*, 336 U.S. 440, 448 (1949) (Jackson, J., concurring); "Developments in the Law Criminal Conspiracy," 72 Harv.L.Rev. 920, 926 (1959).

As a result, as the Second Circuit stated in *United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989), "[t]o be a conspirator, an individual must agree to participate in the conspiracy." 887 F.2d at 1167 (citations omitted). In addition, as the Fourth Circuit noted in *United States v. Manbeck*, 744 F.2d 360 (4th Cir. 1984), "'[p]roof of an agreement to enter into a conspiracy is not to be lightly inferred.'" 744 F.2d at 390, *quoting United States v. Johnson*, 439 F.2d 885, 888 (5th Cir. 1971).

Thus, to be convicted of the crime of conspiracy, the government must prove at trial that the defendant entered into an unlawful agreement with at least one other individual (who was not also acting as a government agent, *see* T. 352 [jury instruction]).

**B.**    ***Evidence Adduced by the Government That a "Steerer" Helped a Willing Buyer Locate a Willing Seller Is Insufficient to Establish the Existence of an Agreement Between the Facilitator and the Seller***

It is also well-settled under Second Circuit case law that "evidence adduced by the government merely show[ing] that [an individual] helped a willing buyer locate a willing seller . . . , standing alone, is insufficient to establish the existence of an agreement between the facilitator and the seller." *United States v. Tyler*, 758 F.2d 66, 69 (2d Cir. 1985) (evidence of

3

facilitator's role insufficient to establish the existence of a conspiracy between facilitator and seller), citing *United States v. Hysohion*, 448 F.2d 343, 347 (2d Cir. 1971) ("fact that Rimbaud told Everett, a willing buyer, how to make contact with a willing seller does not necessarily imply that there was an agreement between that seller . . . and Rimbaud"); *United States v. Torres*, 519 F.2d 723, 726 (2d Cir. 1975) ("membership in a conspiracy is not established . . . by the fact that a defendant told a willing buyer how to make contact with a willing seller").

Moreover, while the court in *Tyler* uses the term "facilitator," Second Circuit case law regularly refers to one who helps a willing buyer locate a willing seller and facilitates a drug transaction by acting as a "go-between" as a "steerer." *See e.g., United States v. Neils*, 156 F.3d 382, 383 (2d Cir. 1998) (defining "steerer" as "a go-between who steers customers to the supplier); *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir. 1989) ("'steerers' play an important role in street-level drug transactions, directing buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation"); *United States v. Resto*, 824 F.2d 210 (2d Cir. 1987) (referring to testimony by undercover officer qualified at trial an expert on the role of "steerers," and noting that "a steerer usually aids in the drug sale by standing a short distance away from the carrier of the drugs, soliciting or screening potential buyers, and guiding buyers to the carrier, who them completes the sale").

C.  ***Evidence Adduced At Trial That Leonard Fitzgerald Was a Mere "Steerer" Helping To Facilitate a Drug Sale Between a Willing Buyer, the Undercover Officer, and a Willing Seller, Mr. Taylor, Was Insufficient to Establish the Existence of an Unlawful Agreement Between Mr. Fitzgerald and Mr. Taylor***

From the start of the government's case to the finish, the government presented Mr. Taylor as a drug seller, and Mr. Fitzgerald as a mere "steerer." By confining Mr. Fitzgerald's

role in the drug transaction to that of a "steerer," it is clearly established under Second Circuit case law that the government did not present sufficient evidence for the jury to conclude that Mr. Taylor conspired with Mr. Fitzgerald to distribute, or to possess with the intent to distribute, cocaine base in violation of 21 U.S.C. §846.

For example, from the first moments of the government's opening statement, the government sought to establish the roles played by Mr. Taylor and Mr. Fitzgerald in the drug conspiracy charged in Count One. Assistant United States Attorney (hereinafter "AUSA") Ryan P. Poscablo identified Mr. Taylor as the drug seller, and his detailed description of Mr. Fitzgerald's role that followed fit squarely within the Second Circuit definition of "steerer," *i.e.*, a person who facilitates a transaction between a willing buyer and a willing seller, and literally steers the buyer toward the seller:

> MR. POSCABLO: In the early evening of March 21, 2011, this man, Javel Taylor, sold crack to an undercover officer. On that day, the undercover police officer approached an individual named Leonard Fitzgerald, and he asked Fitzgerald for another individual named J. The undercover officer was looking to purchase crack cocaine that day. After some discussion, the officer handed Fitzgerald $40, as well as his cell phone. Fitzgerald then used that undercover officer's cell phone to call Javel Taylor, the defendant in this case. Taylor was standing across the street. And after receiving the call from Mr. Fitzgerald, Taylor walked over and he met with the undercover police officer and Mr. Fitzgerald. Fitzgerald and Taylor then began to walk. They walked a short distance. And after a little while, they entered a building located on the Upper West Side of Manhattan. They were followed closely by the undercover officer. Moments later, Fitzgerald exited that very same building and he handed that undercover officer four small ZipLoc bags containing crack cocaine.

T. 31.[1]

---

[1] "T." refers to the trial transcript.

Also, during his direct examination, Detective Jose Rodriguez (hereinafter "the Primary Undercover"), defined the term "steerer" for the jury, and described the role Mr. Fitzgerald played in the drug transaction in a manner consistent with that definition, as well as those provided in Second Circuit case law:

> Q: Have you heard the term "steerer"?
>
> *            *            *
>
> A: A steerer is an individual who will be involved in the sale of narcotics by looking for people who want to use crack and taking them to someone who is actually holding the crack and ready to sell the crack.

T. 118.

> Q: Now, at the time you met with Mr. Fitzgerald, did you engage him in any conversation?
>
> *            *            *
>
> A: We entered into a conversation. As a result of that conversation he asked me for my phone because of what I had asked him, he said he knew J from the projects. He said that if I gave him my phone, he could make a call and we would be able to purchase crack from the individual he was calling.
>
> Q: At this time, was crack discussed?
>
> A: Yes. During our conversation, a couple of things were discussed.
>
> Q: What other things were discussed?
>
> A: We discussed the fact that I wanted to purchase crack. We discussed the amount and also money. And we discussed who we would be able to buy the crack from.
>
> Q: And who was that person?
>
> A: J was the name given.
>
> Q: Did you actually call this individual on your phone?

A: I entered the number and then I handed the phone to Mr. Fitzgerald.

\* \* \*

Q: Now, you testified you began walking with Mr. Fitzgerald, is that correct?

A: Yes.

Q: Did you stop somewhere?

A: Yes.

Q: Where did you stop?

A: I stopped on the corner of Amsterdam Avenue and 103rd Street.

\* \* \*

Q: Now, after you arrived there, what if anything did Fitzgerald say next?

A: We engaged in a short conversation again. At one point specifically he told me that he saw J approaching us, that individual he had called who was going to sell the crack to us was approaching us. And he pointed and I looked across the street. At that point I saw someone coming from the east side of Amsterdam over to us on the west side.

\* \* \*

Q: Who is that?

A: He was identified to me as the defendant, Mr. Taylor.

\* \* \*

Q: What did you do after the defendant approached you and Mr. Fitzgerald?

A: Before the defendant was very close to us, Mr. Fitzgerald told me that he felt he knew the defendant better and that I should take a few steps away and that he should deal with Mr. Taylor and that he should get the crack from Mr. Taylor and then he would bring it to me.

T. 128-134.

7

Similarly, during the direct examination of Police Officer Wyatt Jeffers (hereinafter "the Ghost Undercover"), the government again sought to elicit definitions of the various roles played by those involved in typical street-level drug transactions, and the Ghost Undercover began to define the role of a "steerer," ultimately leading to an objection by defense counsel. T. 162.

While the Ghost Undercover was not permitted to define fully the role of a "steerer," he did, however, explain Mr. Fitzgerald's role in the drug transaction in detail. His description of Mr. Fitzgerald's role was consistent with the Primary Undercover's testimony, and clearly established that Mr. Fitzgerald operated as the "steerer" in the drug transaction. T. 165-169.

According to the Ghost Undercover,

A: I observed the primary undercover interacting with a male who was later known to me as Leonard Fitzgerald.

\*          \*          \*

Q: What did you observe after the primary undercover made contact with Mr. Fitzgerald?

A: I observed the primary undercover and Mr. Leonard walk eastbound on 103rd street and stop on the northwest corner of 103rd street and Amsterdam Avenue, where I saw the primary undercover give his phone to Mr. Leonard Fitzgerald, at which point Mr. Leonard Fitzgerald put that phone up to his ear as making a phone call.

\*          \*          \*

A: I, shortly after that, I observed a male who was later known to me as Javel Taylor cross the street from the east side to the west side of 103rd Street and Amsterdam Avenue.

\*          \*          \*

A: Mr. Javel Taylor and Leonard Fitzgerald proceeded to walk eastbound on 103rd Street walkway into the housing development with the primary undercover not to fall behind them.

         *    *    *

Q:  And at some point did Fitzgerald and the defendant stop?

A:  Yes, they did.

Q:  Where was that?

A:  That was in front of 860 Columbus Avenue.

         *    *    *

Q:  Now you saw Mr. Taylor and Mr. Fitzgerald enter that building?

A:  Yes, I did.

         *    *    *

Q:  After a minute passed, what if anything did you see next?

A:  After that I observed Mr. Leonard Fitzgerald exit the location . . ., 860 Columbus, and approach the primary undercover.  They – together walked to the side of 870 Columbus and I observed Mr. Leonard Fitzgerald hand small objects to the primary undercover.

T. 165-169.

    As the government argued in its opening, and presented via the testimony of the Primary Undercover and the Ghost Undercover – the two undercover officers closest to the drug sale that is the object of the conspiracy charges in Count One – it is clear that Mr. Fitzgerald's role in the drug transaction never went beyond that of a mere "steerer."  Nor was there testimony that Mr. Fitzgerald received any compensation for his role, or that he played any other role besides "steerer" in this or any other transaction.

    Consequently, it light of the Second Circuit case law that finds "evidence. . . merely show[ing] that [an individual] helped a willing buyer locate a willing seller . . . , standing alone,

9

. . . insufficient to establish the existence of an agreement between the facilitator and the seller," it is clear that the government failed to establish the existence of a conspiracy in this case. *See, e.g., Tyler*, 758 F.2d at 69. Accordingly, Mr. Taylor's conviction on Count One must be vacated, and a judgment of acquittal entered.

**POINT II**

**A NEW TRIAL SHOULD BE ORDERED ON COUNT TWO BECAUSE THE THE JURY WAS ERRONEOUSLY INSTRUCTED THAT IT COULD FIND MR. TAYLOR GUILTY ON COUNT TWO AS AN AIDER AND ABETTOR**

In addition, a new trial should be ordered on Count Two because although the evidence at trial could not have established Mr. Taylor as an aider and abettor, and the only conceivable basis for liability presented by the government with respect to Mr. Taylor was as a *principal*, the Court instructed the jury that it could find Mr. Taylor guilty on Count Two on an aiding and abetting theory of liability pursuant to 18 U.S.C. §2.[2] As a result, Mr. Taylor's conviction on Count Two must be vacated, and a new trial ordered.

A. *The Law Regarding the Crime of Aiding and Abetting*

Second Circuit case law makes plain that a principal in a transaction cannot be an aider and abettor, because the aider and abettor, by definition, is someone *other than* the principal. For instance, in *Tyler*, the Second Circuit states, "aiding and abetting requires there be a 'community of unlawful intent' between the aider and abettor *and the principal*." *Tyler*, 758 F.2d at 71, *quoting United States v. Bright*, 630 F.2d 804, 813 (5th Cir. 1980) (citations omitted in original)

---

[2] Nothing in this Memo of Law should be construed as conceding that Mr. Taylor was in any way involved in the drug transaction charged in the Indictment. This Memo of Law merely assumes his involvement for purposes of analyzing which theories of liability could properly have been presented to the jury.

(emphasis added).

Likewise, in *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996), the Court explained that to prove liability of an aider and abettor, "[t]he government must . . . prove the *underlying crime was committed by someone other than the defendant* and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime. *Id.*, *citing United States v. Labat*, 905 F.2d 18, 23 (2d Cir.1990) (emphasis added). *See also United States v. Smith*, 198 F.3d 377, 383 (2d Cir.1999).

In fact, by specifying that an aider and abettor can be held responsible (and punished) *as a principal*, 18 U.S.C. §2, the statute defining liability for aiding and abetting, makes clear that an aider and abettor is a *lesser* participant in the underlying crime. *See* 18 U.S.C. §2(a) (stating "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable *as a principal*") (empahsis added).

In the specific context of street-level drug transactions, such as the one at issue here, case law also demonstrates that "the steerer" is *not* the principal. *See, e.g., Resto*, 824 F.2d at 211 (stating that "a steerer usually *aids* in the drug sale") (emphasis added). Rather, the principal is the "willing seller" in the transaction, to whom "the steerer" – in his role as "mere casual facilitator" – directs the willing buyer. *See, e.g., Hysohion*, 448 F.2d at 346-47 (discussing the government's failure to prove that Rimbaud was not a mere casual facilitator who knew only the source of the drugs, but who lacked a working relationship with *the principal* [– the drug seller –] that enables an assurance of delivery) (emphasis added).

**B.**     *Mr. Taylor Could Not Have Aided and Abetted the Crime Charged In Count Two*

The evidence at trial – in particular evidence regarding Mr. Fitzgerald's marginal role as "steerer," and Mr. Taylor's alleged principal role as drug seller – eliminated the possibility of Mr. Taylor aiding and abetting Mr. Fitzgerald's commission of Count Two. As set forth **ante**, the government's theory of the case presented in its opening statement, and through the testimony of the Primary Undercover and the Ghost Undercover, positions Mr. Taylor as the party who allegedly "sold crack" and "violated the federal narcotics laws by selling crack cocaine," T. 31, 32, and not as a party who merely aided and abetted that effort. Conversely, by placing Mr. Fitzgerald squarely in the role of "steerer," the government made clear that he could *not* have been the principal. *See* T. 31, 118, 128-34, 165-69. *See also* **ante**, at POINT I.

By arguing and presenting evidence at trial alleging Mr. Taylor was the sole principal in the drug transaction charged in Count Two, the government foreclosed an instruction that Mr. Taylor could be tried as an aider and abettor. Thus, the court improperly instructed the jury, over defense objection, T. 278, that it could find Mr. Taylor guilty on the invalid theory of liability that he aided and abetted in the drug sale. T. 365-67. As a result, Mr. Taylor's conviction on Count Two must be vacated, and a new trial ordered.

**Conclusion**

Accordingly, for all the reasons set forth above, as well as those previously stated as part of Mr. Taylor's motions at trial, it is respectfully submitted that Mr. Taylor's motion pursuant to Rule 29(c) and Rule 33, Fed.R.Crim.P., should be granted in its entirety, that both Counts should be vacated, a judgment of acquittal entered on Count One, and a new trial ordered on Count Two.

Dated: 6 January 2012
       New York, New York

                                        Respectfully submitted,

                                        /S/ Joshua L. Dratel
                                        Joshua L. Dratel
                                        Dratel & Mysliwiec, P.C.
                                        Two Wall Street
                                        Third Floor
                                        New York, New York 10005
                                        (212) 732-0707
                                        jdratel@dratelmys.com

                                        *Attorneys for Defendant Javel Taylor*

– Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis