```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA       :
                              :
          - v. -              :    11 Cr. 310 (PGG)
                              :
JAVEL TAYLOR,                  :
                              :
          Defendant.          :
                              :
- - - - - - - - - - - - - - - x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JAVEL TAYLOR'S MOTION FOR ACQUITTAL AND/OR A NEW TRIAL PURSUANT TO RULES 29 AND 33**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

AMY LESTER
RYAN P. POSCABLO
Assistant United States Attorney
        -Of Counsel-

## <u>TABLE OF CONTENTS</u>

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Procedural History . . . . . . . . . . . . . . . . . 1

    B.   The Government's Proof At Trial . . . . . . . . . . . 2

    C.   Taylor's First Rule 29 Motion. . . . . . . . . . . . 5

    D.   The Defense Case . . . . . . . . . . . . . . . . . . 7

    E.   The Jury Charge and The Verdict. . . . . . . . . . . 7

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.   Taylor's Conviction on the Narcotics Conspiracy
        Charged in Count One Was Supported by Sufficient
        Evidence . . . . . . . . . . . . . . . . . . . . . . 8

    B.   The Court Properly Charged the Jury on an Aiding and
        Abetting Theory on Count Two . . . . . . . . . . . .15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

The Government respectfully submits this Memorandum of Law in opposition to defendant Javel Taylor's motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or a new trial pursuant to Rule 33.  For the reasons set forth below, the defendant's motion should be denied.

I.   **Background**

    A.   **Procedural History**

On March 22, 2011, Taylor was arrested and charged in a federal criminal complaint in two counts with: (1) conspiring to distribute, and possess with intent to distribute, a quantity of crack cocaine in or about March 2011, in violation of Title 21, United States Code, Section 846, and (2) distributing and possessing with the intent to distribute, a quantity of crack cocaine on or about March 21, 2011, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(C), and Title 18, United States Code, Section 2.  On April 4, 2011, Indictment 11 Cr. 310 (PGG) was filed, containing the same charges.  Taylor's co-defendant, Leonard Fitzgerald, pled guilty to both counts of the Indictment on April 27, 2011.

On July 21, 2011, the Court held an evidentiary hearing in response to Taylor's motion to suppress statements and physical evidence seized by law enforcement.  On September 19, 2011, the Court denied the motion in relevant part.

The trial against Taylor began on November 29, 2011 and concluded on December 1, 2011, when the jury convicted him on

both counts.

**B.   The Government's Proof at Trial**

At trial, the Government's evidence proved conclusively that, in or about March 2011, Taylor participated in a conspiracy to sell crack cocaine in the Frederick Douglass Houses (the "Douglass Houses") on the Upper West Side of Manhattan, in New York City.  The Government also proved that, on March 21, 2011, Taylor possessed crack cocaine with the intent to distribute it.

The evidence at trial established that Taylor and Fitzgerald sold crack cocaine to an undercover officer with the New York City Police Department ("NYPD") on March 21, 2011 in the Douglass Houses.  On that day, the primary undercover officer who participated in the transaction, Detective Jose Rodriguez, approached Fitzgerald on West 103rd Street, between Broadway and Amsterdam Avenues.  (Tr. 125-26, 166).[1]  Detective Rodriguez, who was posing as a user of crack cocaine, engaged Fitzgerald in a conversation about purchasing crack.  (Tr. 126, 128).  Detective Rodriguez asked Fitzgerald whether he knew an individual named "J," and said that he wanted to buy some crack cocaine.  (Tr. 128, 144).  Fitzgerald said that he knew an individual named "J" from the projects -- referring to the Douglass Houses -- who would have crack for sale.  (Tr. 128).  Fitzgerald then offered

_____

[1] "Tr." refers to the trial transcript; "GX" refers to a Government Exhibit admitted during the trial; and "Br." refers to the memorandum of law filed in support of Taylor's motion.

to place a call to "J" on Detective Rodriguez's cellphone, and in fact did so.  (Tr. 128-29, 166).  During that call, Detective Rodriguez heard Fitzgerald discussing a location and an amount -- four -- which referred to "four dimes" or four bags of crack cocaine costing $10 each.  (Tr. 129).  When Fitzgerald finished speaking to "J," he and Detective Rodriguez walked to the corner of West 103rd Street and Amsterdam Avenue, across the street from the entrance to the Douglass Houses.  (Tr. 51, 129-30; GX 1, 5). When they got to that location, Fitzgerald told Detective Rodriguez that he saw "J" approaching, and pointed to a man crossing Amsterdam from east to west, who was wearing a red sweatshirt and a black leather jacket with a white or shiny design on the back.  (Tr. 52-53, 132-33, 167; GX 2, 3).  That man was later identified as Javel Taylor.  (Tr. 53, 133).

Once Taylor approached, Fitzgerald asked Detective Rodriguez to step away because he knew Taylor better and would be able to get the crack cocaine from Taylor and bring it to the Detective. (Tr. 133-34).  Prior to stepping away, Detective Rodriguez gave Fitzgerald $40 in pre-recorded buy money to purchase the crack cocaine from Taylor.  (Tr. 130, 150-51).[2]  After Fitzgerald and Taylor spoke briefly, they walked across Amsterdam Avenue and

---

[2] The money was "pre-recorded" in the sense that it had been photocopied before the buy operation in order to have a record of the serial numbers in the event that the money was later recovered from an arrestee.  (Tr. 46-47).

entered the Douglass Houses through a walkway at 103rd Street. (Tr. 55, 57, 134, 167; GX 1, 6).  Detective Rodriguez followed. (Tr. 55, 135, 167).  Fitzgerald and Taylor entered a building located at 860 Columbus Avenue.  (Tr. 135-36, 168; GX 1, 8).

A short time later, Fitzgerald came out of the building, and he and Detective Rodriguez began to walk north together towards 104th Street.  (Tr. 137-38, 169).  While they were walking, Fitzgerald told Detective Rodriguez that he had successfully obtained crack cocaine from "J" -- that is, Taylor -- and was going to give Detective Rodriguez the crack cocaine in another area, away from 860 Columbus Avenue.  (Tr. 138).  Fitzgerald also apologized for leaving Detective Rodriguez, but explained that "'J' was a little suspicious."  (Tr. 138).  When Detective Rodriguez and Fitzgerald reached a parking lot on the south side of 104th Street, Fitzgerald handed Detective Rodriguez four small Ziplock bags of crack cocaine, which he had been holding in his mouth.  (Tr. 139, 169; GX 100, 200).  At that point, Detective Rodriguez signaled to the other NYPD officers at the location, the field team, that he had successfully purchased crack cocaine, and Fitzgerald was placed under arrest.  (Tr. 59, 60, 139, 169). At the time of his arrest, a piece of paper with the letter "J" written on it, as well as the telephone number that Fitzgerald had called to reach "J," was recovered from Fitzgerald's pocket. (Tr. 61-62, 129; GX 102).

At the same time that Fitzgerald was being placed under arrest, Taylor was standing in front of 860 Columbus Avenue with another individual, who was wearing a gray hooded sweatshirt and a black jacket. (Tr. 170-71, 200-01, 221). As Taylor and that individual walked south towards a walkway located at 102nd Street, Taylor handed the individual a small package that appeared to contain small Ziplock bags of drugs, consistent with the packaging of crack cocaine. (Tr. 171, 200-02, 215, 222; GX 11, 12, 13). Shortly thereafter, Taylor was placed under arrest by members of the field team. (Tr. 204, 230).[3]  Taylor's jacket was searched by Detective John Paul Slater, the leader of the field team, and the $40 in pre-recorded buy money that Detective Rodriguez had used to purchase the crack cocaine was recovered from one of the jacket pockets. (Tr. 73-74; GX 101). After the money was recovered from his jacket, Taylor stated, in sum and substance, "That's not marked money. My sister gave that to me." (Tr. 75).

### C.  **Taylor's First Rule 29 Motion**

At the close of the Government's case, Taylor argued, pursuant to Rule 29, that the Government had failed to meet its burden of showing a conspiracy because the Government had not proven that Fitzgerald was anything more than a "steerer" in the

---

[3] The individual in the gray hooded sweatshirt and black jacket ran away and avoided apprehension by the police. (Tr. 205-06, 216, 230-31).

drug transaction on March 21, 2011, and, therefore, there was insufficient evidence of a "meeting of the minds and an agreement" between Taylor and Fitzgerald.  (Tr. 247).

The Court denied Taylor's Rule 29 motion, stating:

> I find that the evidence is sufficient to go to the jury on both counts.
>
> The jury could infer an agreement between Mr. Fitzgerald and Mr. Taylor to distribute crack cocaine based on the evidence that the undercover made reference to J, and apparently understood him to be a source of crack cocaine.
>
> The jury could find that he put in a call to Mr. Taylor for purposes of arranging the crack transaction, the sale of four baggies of crack cocaine for $40.
>
> The jury could find that Mr. Taylor appeared on the street, met with Mr. Fitzgerald for purposes of discussing the crack transaction. They went into the Frederick Douglass House[s] and specifically the building about which there's been so much testimony.  Mr. Fitzgerald came out with crack cocaine.
>
> A jury . . . could infer that while they were inside the building, Mr. Taylor gave Mr. Fitzgerald the crack cocaine which Mr. Fitzgerald then sold to the undercover officer.
>
> All of this, of course, is bolstered by the evidence from the officer that we heard from today that he saw Mr. Taylor hand a clear plastic bag containing . . . the dark Ziploc bags that the jury could find are used to package crack cocaine, that this officer saw Mr. Taylor hand a package containing these materials to a man who then fled when the police appeared.
>
> So I think there's abundant evidence here

6

both as to the conspiracy count and as to the
substantive count as against Mr. Taylor, and
the motion for a judgment of acquittal on the
Rule 29 is denied.

(Tr. 248-49).

### D.   **The Defense Case**

The defense presented the testimony of one witness, Dema

Jones, whose boyfriend was a friend of Taylor's.  (Tr. 255).

Jones testified that she had been with Taylor just prior to his

arrest on March 21, 2011, at Jones' boyfriend's apartment, which

is located at 860 Columbus Avenue.  (Tr. 255-56).  According to

Jones, Taylor had picked up his niece from school prior to

arriving at her boyfriend's apartment, and was supposed to take

the niece to his sister's house.  (Tr. 256-57).  Jones, Taylor,

and Taylor's niece left 860 Columbus Avenue together and Jones

took Taylor's niece to a nearby store to get something to eat.

(Tr. 257).  When they returned, about ten minutes later, Jones

saw that Taylor had been placed under arrest by the NYPD.  (Tr.

257-58).

### E.   **The Jury Charge and the Verdict**

During the charge conference, defense counsel objected to

the inclusion of an aiding and abetting charge with respect to

Count Two, the substantive narcotics charge, as proposed by the

Government, stating, "I would object to the aiding and abetting

charge.  I don't think that there is any reason to complicate

this case any further.  It is a simple case with a simple theory

7

on both sides." (Tr. 270).  The Government argued that the proposed charge was important "given the facts of the case and . . . that the defense is basically going to be that there was no hand-to-hand transaction here." (Tr. 270).  The Court agreed, stating, "I am inclined to give the aiding and abetting [instruction] . . . because Mr. Taylor didn't have any direct contact with the undercover officer, and I do think there is a factual basis for aiding and abetting.  The government charged it." (Tr. 270).

The jury returned a verdict of guilty on both charges on December 1, 2011.

## II.  Discussion

Taylor seeks a judgment of acquittal, or alternatively, a new trial, arguing (1) that there was insufficient evidence to support his conviction on Count One, the conspiracy count of the Indictment, and (2) that the Court erred in instructing the jury on an aiding and abetting theory with respect to Count Two, the substantive count of the Indictment.  Taylor's claims are meritless, and the Court should deny the motion in its entirety.

### A.  Taylor's Conviction on the Narcotics Conspiracy Charged in Count One Was Supported by Sufficient Evidence

Taylor challenges the sufficiency of the evidence supporting his conviction on the crack cocaine conspiracy charged in Count One of the Indictment.  Specifically, Taylor argues that there was insufficient evidence of an unlawful agreement between Taylor

8

and Fitzgerald, who was merely a steerer in the charged crack transaction.  (Br. 1-10).  Taylor's argument is meritless, because the evidence at trial amply supported the jury's finding that Taylor agreed with others to distribute, or possess with the intent to distribute, crack cocaine.

### 1.  Applicable Law

A defendant challenging the sufficiency of the evidence under Rule 29 bears a "heavy burden."  United States v. Autori, 212 F.3d 105, 114 (2d Cir. 2000) (quoting United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994) (internal quotation marks omitted)).  In considering a motion for judgment of acquittal, "the Court 'must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'"  United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984)).

Accordingly, a motion under Rule 29 must be denied if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Guadagna, 183 F.3d at 130 (quoting United States v. Resto, 824 F.2d 210, 212 (2d Cir. 1987)).  "In other words, the court may enter a judgment of acquittal only if the evidence that the defendant committed the

9

crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"   Id. (citation omitted); see also United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996).

In a Rule 29 motion, the Court must view the evidence in the light most favorable to the Government, see Autori, 212 F.3d at 114; Guadagna, 183 F.3d at 129, and must "credit[] every inference that the jury might have drawn in favor of the government."  Hernandez, 85 F.3d at 1030; see also United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998); United States v. Allah, 130 F.3d 33, 45 (2d Cir. 1997); United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).  Similarly, the Second Circuit has repeatedly emphasized that to defeat a Rule 29 motion, "the government need not 'exclude every reasonable hypothesis other than that of guilt.'"  Guadagna, 183 F.3d at 130 (quoting Holland v. United States, 348 U.S. 121, 139 (1954)).  Where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the Court] must let the jury decide the matter."  Autori, 212 F.3d at 114 (citation and internal quotation marks omitted).  Consistent with this approach, all issues of credibility must be resolved  in the Government's favor.  See United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998).  Where, as here, a defendant challenges a conspiracy conviction, "deference to the jury's findings is especially

10

important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." <u>United States</u> v. <u>Santos</u>, 541 F.3d 63, 70 (2d Cir. 2008) (quoting <u>United States</u> v. <u>Morgan</u>, 385 F.3d 196, 204 (2d Cir. 2004) internal quotation marks omitted)); <u>see</u> <u>United States</u> v. <u>Rodriguez</u>, 392 F.3d 539, 545 (2d Cir. 2004) ("To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." (citation and internal quotation marks omitted)).

### 2. Discussion

Applying the standard for motions under Rule 29 here, Taylor's attack on the sufficiency of the evidence of the conspiracy charged in Count One is easily rejected.  Indeed, the evidence of an agreement between Taylor and others to distribute, or possess with the intent distribute, crack cocaine was more than sufficient to support the jury's verdict.  That evidence included, first and foremost, the testimony of the primary undercover officer, Detective Rodriguez, that Fitzgerald knew "J" as someone who had crack cocaine available for sale (Tr. 128), that Fitzgerald called "J" to arrange a transaction for four bags of crack cocaine (Tr. 128-29), that Fitzgerald described himself

11

as having a relationship with "J" (Tr. 133-34), that Taylor approached Fitzgerald after the telephone call and proceeded to walk with Fitzgerald to 860 Columbus Avenue (Tr. 138-39), and that Fitzgerald told Detective Rodriguez that he obtained the crack cocaine from "J" and apologized for not allowing the Detective to interact with "J" directly (Tr. 138).  In addition, the physical evidence recovered from Fitzgerald -- the piece of paper with a telephone number for "J" (GX 102) -- and Taylor -- the $40 in prerecorded buy money provided by Detective Rodriguez to Fitzgerald to purchase the crack (GX 101) -- both provided proof of an agreement between Fitzgerald and Taylor to distribute crack cocaine.  Finally, the ghost undercover, Officer Jeffers, and Officer Mejia both testified that they saw Taylor hand a small package of what appeared to be Ziplock bags of crack cocaine to the individual in the gray hooded sweatshirt outside of 860 Columbus Avenue (Tr. 171, 200-02, 215, 222), which testimony supports a finding that Taylor had an agreement with that individual to distribute, or possess with the intent to distribute, crack cocaine.  All of this evidence, taken together, and viewed in the light most favorable to the Government, is more than sufficient to provide support for the jury's guilty verdict on Count One.  See, e.g., Autuori, 212 F.3d at 114 (a reviewing court must "consider the evidence in its totality, not in isolation").

Taylor claims that the evidence at trial demonstrated nothing more than Fitzgerald's role in helping a willing buyer (Detective Rodriguez) locate a willing seller (Taylor), which is insufficient to establish evidence of an agreement between Fitzgerald and Taylor under the Second Circuit's decision in United States v. Tyler, 758 F.2d 66 (2d Cir. 1985). But Tyler can be easily distinguished from the instant case, based on the nature of the evidence presented at trial against Taylor.

In Tyler, the Second Circuit reversed the defendant's conspiracy conviction on the basis that there was no evidence that the defendant, who acted as the "facilitator" in the transaction, "asked [the undercover officer] how much heroin he sought to purchase, that [the defendant] indicated that he had a specific source of heroin in mind for [the undercover officer], that [the defendant] knew where to find [the seller] or expected him to be in the area, or that [the defendant] had made any previous deals with [the seller]." 758 F.2d at 68-69. Thus, the Second Circuit found that the "evidence adduced by the government merely shows that [the defendant] helped a willing buyer locate a willing seller" and "such evidence, standing alone, is insufficient to establish the existence of an agreement between the facilitator and the seller." Id. at 69. Similarly, in United States v. Hysohion, 448 F.2d 343 (2d Cir. 1971), cited by the Tyler Court, the Second Circuit found that the government had

13

not proven that the defendant "was not a mere casual facilitator who only knew a source of drugs, but who lacked a working relationship with the principal," and therefore overturned the defendant's conviction on the conspiracy count.  448 F.2d at 346-47.

By contrast, in this case, Detective Rodriguez testified that he discussed a purchase of four bags of crack with Fitzgerald (Tr. 129), that Fitzgerald knew "J" as a source of crack cocaine in the Douglass Houses (Tr. 128), and that Fitzgerald had a telephone number for "J" (Tr. 128-29), indicating that Fitzgerald had dealt with "J" previously.  In addition, the fact that Fitzgerald conducted the transaction with Taylor on behalf of Detective Rodriguez, taking the pre-recorded buy money from Detective Rodriguez and giving him the crack cocaine, further demonstrates that Fitzgerald had a relationship with Taylor that went well beyond that of the defendant in Tyler, who was a mere "facilitator."  Thus, while the Government used the term "steerer" at trial to help the jury understand Fitzgerald's role in the transaction relative to Taylor's role, the evidence at trial was sufficient to establish that Fitzgerald and Taylor entered into an agreement to distribute crack cocaine to Detective Rodriguez.[4]

---

[4] The Tyler Court used the term "facilitator" rather than the term "steerer."  In relying on Tyler, Taylor appears to argue that the two terms are interchangeable, but the Second Circuit

14

In short, the evidence presented at trial -- taken in the context of all the other evidence and seen in the light most favorable to the Government -- amply supported the jury's verdict that Taylor was guilty of the conspiracy count.  The Court should therefore deny Taylor's Rule 29 motion on this issue.

**B.**   **The Court Properly Charged the Jury on an Aiding and Abetting Theory on Count Two**

Taylor also claims that he is entitled to a new trial on Count Two because the Court erred in instructing the jury on an aiding and abetting theory with respect to Count Two, the substantive drug count, when the evidence at trial did not support that theory.  (Br. 10-12).  This argument fails, because the evidence at trial could have supported a finding that Taylor aided and abetted Fitzgerald in conducting the transaction with Detective Rodriguez, and the Court's instruction to the jury was therefore appropriate.

**1.   Applicable Law**

Rule 33 gives the trial court discretion to order a new

---

has noted that "'[s]teerers' play an important role in street-level drug transactions, directing buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation," and therefore are not entitled to a "minimal participant" role reduction under the United States Sentencing Guidelines.  United States v. Colon, 884 F.2d 1550, 1552 (2d Cir. 1989), abrogated on other grounds by United States v. Booker, 543 U.S. 220 (2005); see also United States v. Neils, 156 F.3d 382, 383-84 (2d Cir. 1998) (same).  Thus, Taylor's argument that, because the Government characterized Fitzgerald as a "steerer" during its jury addresses, he and Taylor could not have had an agreement to distribute crack, is unavailing.

trial "to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). While the trial court may weigh the evidence and the credibility of the witnesses on a Rule 33 motion, the Second Circuit has warned against "wholly usurping the role of the jury." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting Autuori, 212 F.3d at 120 (internal quotation marks omitted). Accordingly, "courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility." Id. In general, the trial court need only satisfy itself that the jury's verdict is supported by "'competent, satisfactory and sufficient'" evidence, and a verdict should only be overturned where there is "'a real concern that an innocent person may have been convicted.'" Id. at 134 (quoting Sanchez, 969 F.2d at 1414).

The Second Circuit has made plain that trial courts "must exercise the Rule 33 authority 'sparingly,'" and only "in 'the most extraordinary circumstances.'" Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414). "'It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" Id. at 133-34 (quoting Sanchez, 969 F.2d at 1414). "An example of exceptional circumstances [warranting a new trial] is where testimony is 'patently incredible or defies physical

realities.'"   <u>Id.</u> at 133-34 (citation omitted).   Even "the
district court's rejection of trial testimony by itself,"
however, "does not automatically permit Rule 33 relief."   <u>Id.</u> at
134.   In short, the "ultimate test on a Rule 33 motion is whether
letting a guilty verdict stand would be a manifest injustice."
<u>Id.</u>

### 2.   Discussion

As a threshold matter, Taylor does not claim that the
Court's instruction to the jury on aiding and abetting was an
incorrect statement of the law.   Rather, Taylor argues that
because "the only conceivable basis for liability presented by
the government" at trial was that Taylor was the principal in the
drug transaction with Detective Rodriguez, the Court should not
have issued an instruction on aiding and abetting.   (Br. 10).
Taylor is wrong.

The Court properly instructed the jury on aiding and
abetting because the trial evidence could have supported a
conviction on an aiding and abetting theory, and aiding and
abetting was charged by the Government in the Indictment.   Taylor
could have been found guilty as an aider and abettor because he
had knowledge of Fitzgerald's criminal activities -- that is,
Fitzgerald's interaction with Detective Rodriguez -- and he
intentionally took some action -- under this theory, leading
Fitzgerald to a source of crack cocaine -- to help make the crime

succeed.  See United States v. Hamilton, 334 F.3d 170, 180 (2d Cir. 2003) ("Under 18 U.S.C. § 2, a defendant may be convicted of aiding and abetting a given crime where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime.").  Because there was no testimony about a hand-to-hand exchange of crack cocaine for money between Fitzgerald and Taylor, and no evidence of any interaction at all between the undercover officer and Taylor, the jury could have found that Fitzgerald was the principal in the transaction, and that Taylor aided and abetted his commission of the offense.

The Government was not required to prove that Taylor committed the crimes charged by acting *either* as a principal *or* as an aider and abettor, but that he could not be both.  Aiding and abetting is not a separate basis for criminal liability; rather, it is simply one manner in which a defendant can be held responsible as a principal.  As the Second Circuit has explained,

> aiding and abetting "does not constitute a discrete criminal offense but only serves as a more particularized way of identifying 'persons involved' [in the offense]."  In fact, "when a person is charged with aiding and abetting the commission of a substantive offense, the 'crime charged' is . . . the substantive offense itself."

United States v. Smith, 198 F.3d 377, 383 (2d Cir. 1999)

18

(citations omitted).  Thus, the Government does not have to choose between seeking to convict a defendant as a principal or as an aider and abettor, and can properly argue that the defendant was both.  Indeed, even the jury does not have to decide whether the defendant was a principal or an aider and abettor: a conviction is proper even if some jurors believe that the defendant acted as a principal and others believe he aided and abetted another.  See United States v. Becerra, 97 F.3d 669, 672 (2d Cir. 1996) (defendant's "conviction as an aider and abettor was not erroneous since the jury had ample evidence on which to convict her as a principal"); United States v. Peterson, 768 F.2d 64, 67 (2d Cir. 1985) (conviction valid under 18 U.S.C. § 2(a) "even if some jurors believed that [the defendant] and the other jurors believed that [a co-defendant] was the aider or abettor").

   In any event, the evidence at trial amply supported Taylor's conviction as a principal on Count Two.  Thus, in light of the strength of the evidence with regard to Taylor's conviction as a principal on Count Two, it cannot be said that it is a "manifest injustice" to let the jury's guilty verdict stand.  See, e.g., Griffin v. United States, 502 U.S. 46 (1991) (where the jury is properly charged with two alternative theories of guilt, the conviction must be affirmed as long as the evidence is sufficient to convict on one of those theories).  Accordingly, Taylor's

19

challenge to the Court's aiding and abetting charge on Count Two should be rejected.

## CONCLUSION

For all of the above reasons, the Government respectfully requests that the Court deny Taylor's motion in its entirety.

Dated:     New York, New York
           January 27, 2012

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney


                             By: ___s/ Amy Lester_____
                                    Amy Lester/Ryan P. Poscablo
                                    Assistant United States Attorneys
                                    212-637-2416/2634