**MANDATE**

12-4994-cr
*United States v. Taylor*

N.Y.S.D. Case #
11-cr-0310-2(PGG)

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand thirteen.

PRESENT:  DEBRA ANN LIVINGSTON,
          GERARD E. LYNCH,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 14, 2013

UNITED STATES OF AMERICA,

          *Appellee*,

-v-    No. 12-4994-cr

LEONARD FITZGERALD,

          *Defendant*,

JAVEL TAYLOR,

          *Defendant-Appellant*.

JOSHUA L. DRATEL (Lindsay A. Lewis, Whitney Schlimbach, of Counsel), Dratel & Mysliwiec, New York, NY, *for Defendant-Appellant*.

> JUSTIN ANDERSON, AMY LESTER, Assistant
> United States Attorneys, *for* Preet Bharara,
> United States Attorney for the Southern
> District of New York, New York, NY, *for*
> *Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered November 30, 2012, is **AFFIRMED**.

Defendant-Appellant Javel Taylor ("Taylor") appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), entered November 30, 2012. Taylor was convicted, after a jury trial, of one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, and one count of distribution of a controlled substance, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2. We assume the parties' familiarity with the facts of the case and the issues presented for appellate review.

Taylor raises four claims on appeal: (1) that the district court erred in denying Taylor's claim under *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) that the district court's admission of certain background evidence was erroneous under Rules 404(b) and 403 of the Federal Rules of Evidence; (3) that the evidence of an unlawful agreement on the conspiracy count was insufficient; and (4) that the district court erred in instructing the jury on an aiding and abetting theory of liability when Taylor was portrayed as a principal at trial. We find all four claims to be without merit.

I. Batson *Claim*

First, Taylor cannot demonstrate that the district court erred in concluding that the Government did not violate Taylor's equal protection rights during jury selection. The trial court uses a three-step process for analyzing a claim under *Batson*:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*United States v. Douglas*, 525 F.3d 225, 238 (2d Cir. 2008) (quoting *Hernandez v. New York*, 500 U.S. 352, 358-59 (1991) (plurality opinion)) (internal citations omitted). Taylor argued to the district court that the Government used peremptory strikes to exclude three of four African-American jurors in the venire. The district judge expressed uncertainty about whether two of the three jurors identified by the defense were, in fact, African-American, but assuming that they were, credited the Government's race-neutral explanations for the strikes. Taylor argues that the district court erred in concluding that the Government's stated reasons for its challenges were not pretexts for racial discrimination.

"[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez*, 500 U.S. at 364. Therefore, the court's "finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous." *Douglas*, 525 F.3d

at 239. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)) (internal quotation marks omitted).

Here, the district court noted that the three jurors who had been removed by the Government "were among the most disengaged in the process," a factor that we have previously credited as a valid race-neutral explanation. *See Messiah v. Duncan*, 435 F.3d 186, 200 (2d Cir. 2006) ("A prosecutor may reasonably have qualms about a panelist who fails to pay attention during voir dire."). The court observed specifically that one of the challenged jurors gave "monosyllabic responses" and that another appeared not to have "understood all of the questions before he answered." *See Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005) ("[T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge."). We discern no clear error in these determinations, nor can we identify error in the court's conclusion that the government's reasons for striking the third juror – because her employment could lead her to identify with the defendant and because she enjoyed watching CSI, a police forensic drama – were not pretextual. *See United States v. Farhane*, 634 F.3d 127, 157-58 (2d Cir. 2011) ("[I]t was plausible for the prosecutor to think that a juror who regularly watched television shows in which forensic science conclusively solved crimes might be more inclined to demand such evidence in order to convict."). Accordingly, Taylor's claim is without merit.

II. *Admission of Prior Acts as Background Evidence*

Taylor next argues that the district court erred in permitting an undercover officer to testify about an unconsummated drug sale several weeks before the charged conduct, in supposed violation of Rules 404(b) and 403. "We accord a district court's evidentiary rulings deference, and reverse only for abuse of discretion." *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). Here, the district court did not abuse its discretion in concluding that the testimony was admissible.

During the challenged testimony, the officer stated that a few weeks prior to the March 2011 transaction, he received a cell phone number for an individual known as "J" and placed an order for crack cocaine. Once the officer arrived at the location where he had arranged to meet "J," he called the same number again and Taylor subsequently approached with "what appeared to be crack cocaine in his hand." Once he saw the officer, however, Taylor decided not to consummate the transaction and ran into a stairwell.

The evidence of this prior occurrence was relevant background to the charged March 2011 transaction. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009). Background evidence is permissibly admitted "to enable the jury to

5

understand the complete story of the crimes charged." *United States v. Reifler*, 446 F.3d 65, 92 (2d Cir. 2006) (internal quotation marks omitted).  Here, the challenged evidence buttressed the officer's identification of Taylor at the time of the later March 2011 transaction and also helped to explain why the police were interested in purchasing cocaine from "J" on March 21, 2011.

The district court did not err, moreover, in determining that the probative value of the undercover officer's testimony was not substantially outweighed by the danger that it would unfairly prejudice the defendant. *See United States v. Goffer*, 721 F.3d 113, 129 (2d Cir. 2013).  The offered evidence was "not especially worse or more shocking than the activity charged" in the indictment. *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012) (alteration and internal quotation marks omitted).  And any risk of unfair prejudice was further mitigated by a limiting instruction from the district court that specifically directed the jurors that they could not convict Taylor based on any evidence of acts other than the charged March 2011 transaction. *See United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (citing *Mercado*, 573 F.3d at 142).  Accordingly, the trial court did not abuse its discretion in admitting the evidence of the prior attempted sale.

III. *Sufficiency of the Evidence*

Third, Taylor challenges his conspiracy conviction on Count One, claiming that there was insufficient evidence to demonstrate an unlawful agreement to distribute controlled

substances. We review the sufficiency of the evidence following a criminal conviction "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013). Central to a conspiracy conviction is an agreement to commit unlawful acts. *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013). "The coconspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." *Id.* (quoting *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000)). The conspiratorial agreement, moreover, "may be tacit rather than explicit." *United States v. Zhou*, 428 F.3d 361, 370 (2d Cir. 2005).

Citing this Court's decision in *United States v. Tyler*, 758 F.2d 66 (2d Cir. 1985), Taylor argues that the evidence showed that his co-defendant, Leonard Fitzgerald ("Fitzgerald"), was merely a facilitator who directed the undercover officer to buy from Taylor, and that such evidence is insufficient to establish a conspiracy to distribute controlled substances. In *Tyler*, however, the defendant merely introduced a buyer to a seller of narcotics, and the buyer and seller separately conducted the unlawful transaction. We noted in concluding that the evidence was insufficient to establish an agreement between the facilitator and the ultimate seller that there was no evidence that the facilitator "asked [the buyer] how much heroin he sought to purchase, that [the facilitator] indicated that he had a specific source of heroin in mind for [the buyer], that [the facilitator] knew where to find [the seller] or

expected him to be in the area, or that [the facilitator] had made any previous deals with [the seller]." *Tyler*, 758 F.2d at 68-69.

That is not this case. Drawing all inferences in favor of the Government, the evidence here showed that Fitzgerald contacted Taylor in response to the undercover officer's inquiry about purchasing crack cocaine and arranged by telephone to meet with Taylor himself. Fitzgerald took the undercover's $40 in marked bills and, out of the sight of the undercover officer, received the crack cocaine from Taylor.

Fitzgerald's role thus was far more active: he knew the amount of crack cocaine that the undercover officer requested; he knew how to contact Taylor; and he implied to the officer that he had conducted previous deals with Taylor. Moreover, he did not introduce Taylor to the undercover officer and allow them to consummate the transaction; rather, he took the officer's money, made the exchange himself, and delivered the drugs to the officer. *See United States v. Brown*, 776 F.2d 397, 403 n.10 (2d Cir. 1985) (distinguishing *Tyler* by stating that, in the case before it, "a jury could reasonably infer prior arrangements or an established working relationship between" a steerer and a seller). Thus, the evidence presented at trial was adequate to allow the jury to conclude that Taylor and Fitzgerald had consummated an unlawful agreement to distribute controlled substances.

IV. *Instruction on Aiding and Abetting*

Finally, Taylor challenges the district court's instruction that Taylor could be convicted on Count Two, which charged him with the substantive distribution of controlled substances, as an aider and abettor of Fitzgerald's commission of the underlying crime. Taylor claims that, given the Government's presentation of evidence that Fitzgerald played the role of the "steerer" in the transaction, Taylor was the principal offender and the district court should not have charged the jury on the theory that Taylor could be guilty on Count Two as an aider and abettor.

"We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998). Those aiding or abetting any federal offense can be charged and convicted as principals. 18 U.S.C. § 2. Where two alternative theories of guilt are charged, the conviction will stand as long as there is sufficient evidence to support a conviction under either theory. *See United States v. Becerra*, 97 F.3d 669, 672 (2d Cir. 1996) (holding that a "conviction as an aider and abettor was not erroneous since the jury had ample evidence on which to convict [the defendant] as a principal"). Because the jury had adequate evidence on which it could have convicted Taylor either as a principal or as an aider and abetter (on the theory that Fitzgerald, who actually "distribute[d]" the drugs to the officer, 21 U.S.C. § 841(a)(1), was the principal, and that Taylor either "aid[ed]" or "command[ed]"

Case 1:19-cr-00310-PGG   Document 70   Filed 11/24/13   Page 10 of 10
Case 2:19-cr-00310-PGG   Document 70   Filed 11/24/13   Page 10 of 10

1    that action, 18 U.S.C. § 2), there was no error and the instruction could not have caused him

2    prejudice. Accordingly, Taylor's claim of error on this ground is unavailing.

3        We have considered all of Defendant-Appellant's remaining arguments and find

4    them to be without merit. For the foregoing reasons, the judgment of the district court is

5    hereby **AFFIRMED**.

6                                               FOR THE COURT:
7                                               Catherine O'Hagan Wolfe, Clerk
8

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit